UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| In re: Odell L. Nevitt, Debtor. | Case No. 05 - 77798 |
|---|---|
| In re: Retia F. Bell, Debtor. | Case No. 05-77943 |
| | Chapter 13<br>Judge Manuel Barbosa |

## MEMORANDUM OPINION OVERRULING THE CHAPTER 13 TRUSTEE'S MOTION TO DISMISS THE DEBTORS' CHAPTER 13 PLANS

This case comes before the Court on the motions to dismiss the Chapter 13 plan filed by the standing chapter 13 trustee (the "Trustee"). The Trustee is represented by Attorney Kathleen A. McCallister. Retia F. Bell and Odell L. Nevitt, the debtors (collectively, "the Debtors"), are represented by Attorney William L. Balsley.

### JURISDICTION

This Court has jurisdiction to decide this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

### NATURE OF CASES

These cases come before the Court on the Trustee's motion to dismiss the Chapter 13 plans. Both of the Debtors' bankruptcy petitions were filed after October 17, 2005. Therefore, these matters are governed by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Pursuant to Form B22C, the Debtors' incomes fall below the median family income. Both of the Chapter 13 plans propose to make

payments in the amount of monthly net income as calculated on Schedule J[1] for thirty-six months. The Trustee calculates the required payments differently. The Trustee asserts that a lump sum amount, otherwise known as the "base amount," must be paid to unsecured creditors in order to comply with § 1325(b)(1)(B). The Trustee determines the base amount by taking a debtor's disposable income as indicated on Schedule J less any amount the debtor receives for child support, foster care income, and/or social security income and deducts a debtor's secured debts (after dividing by 36[2]) and multiplies that amount by 36. The Trustee asserts that the plan duration must extend beyond the 36 month applicable commitment period until the unsecured creditors are paid the full base amount.

The Debtors submitted Forms B22C for illustrative purposes only. The Debtors ask this Court to acknowledge that if the Debtors' incomes were above the median family income the net figures result in a negative number. The Debtors assert, therefore, that they would pay less if they earned more than the median family income. Thus, they propose that when the Trustee's computation results in a higher projected disposable income figure than if the Debtors were to utilize Form B22C, the amount of projected disposable income as calculated on Form B22C should be used.

**Retia F. Bell:**

Retia F. Bell filed the Chapter 13 Petition on December 23, 2005. Schedule I lists total monthly income in the amount of $2,141.00. Schedule J lists total expenses

---

[1] The Debtors actually propose to pay $1.00 less than the amounts listed on Schedule J. The Trustee uses the actual amount listed to calculate the amount of disposable income.

[2] The multiplier used is the total number of months in the applicable commitment period.

in the amount of $1,890.00. The net result is disposable income in the amount of $251.00. The base amount is calculated as follows: $5,600 (total secured debt) / 36 = $155; $251 (disposable income per Schedule J) - $155 = $96 x 36 = $3,456. Because the total amount available to creditors totals $8,360.00[3] and secured payments total $5,600, there remains only $2,770.00[4] available for unsecured creditors. Therefore, the Trustee objects to confirmation of the Plan because it does not propose to pay the unsecured creditors the full base amount of $3,456.00.

**Odell L. Nevitt:**

Odell L. Nevitt filed the Chapter 13 Petition on October 28, 2005. Schedule I lists total monthly income in the amount of $1,975.00. Schedule J lists total expenses in the amount of $1,809.00. The net result is disposable income in the amount of $166.00. The base amount is calculated as follows: $4,000 (total secured debt) / 36 = $111.00; $166 (disposable income per Schedule J) - $111 = $55 x 36 = $1,980.00. Because the total amount available to creditors totals $5,524[5] and secured payments total $4,000, there remains only $1,524.00 available for unsecured creditors. Therefore, the Trustee objects to confirmation of the plan because it does not propose to pay the unsecured creditors the full base amount of $1,980.00.

---

[3] Form B22C submitted by Debtor as an exhibit to the Pretrial Statement indicates the average monthly administrative expense due to the Trustee totals $8.30. When this number is multiplied by 36 months it equals $298.80. The total amount paid to creditors ($9,000) minus the administrative expense totals $8,701.20.

[4] The Court calculates the following: $8,360.00 - $5600.00 = $2,760.00.

[5] Form B22C submitted by Debtor as an exhibit to the Pretrial Statement indicates the multiplier for administrative expenses due to the Trustee equals 8.3

## DISCUSSION

### Amounts Reasonably Necessary to be Expended: Schedule J or Form B22C?

This Court must determine whether Schedule J or Form B22C should be used to calculate "projected disposable income" for debtors whose earnings fall below the median family income. The calculation of disposable income for debtors whose income falls below the median family income is determined in accordance with § 1325(b)(2). That section provides, in relevant part:

> 'disposable income' means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child . . . ) less amounts reasonably necessary to be expended–
> (A)(i) for the maintenance or support of the debtor or a dependent of a debtor, or for a domestic support obligation, that first becomes payable after th date the petition is filed; and
>     (ii) for charitable contributions ... in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made . . . .

11 U.S.C. § 1325(b)(2)(A)(i) and (ii).

The Trustee cites the case of *In re Kibbe* in support of the assertion that a debtor's projected disposable income is determined by Schedules I and J when the debtor earns below the median family income. 341 B.R. 411 (Bankr. W.D. Mo. 2006). The Debtors assert that the total monthly "projected disposable income" as calculated on Form B22 should be used for debtors who earn less than the median family income in order to avoid inequitable results.

Form B22C cannot be used to determine projected disposable income for debtors whose earnings fall below the median family income. This Court previously held that Schedule I, instead of Form B22C, should be used to calculate projected

4

disposable income. *In re DeMonica,* __ B.R. __, 2006 WL 2136169 (July 31, 2006). In that case, this Court explained that Form B22C is used in every chapter 13 case to determine whether a debtor earnings fall below or rise above the median family income. The remaining portion of Form B22C is used to calculate "projected disposable income" in accordance with § 707(b)(2)(A) and (B). In this case, however, the Debtors earn less than the median family income. Subpart A of Form B22C "provide[s] entry lines for each of the specified expense deductions under the IRS standards, and instructions on the entry lines identify the web pages where the relevant IRS allowances can be found." (Form B22 committee note para. C1.)[6]

Section 1325(b)(3) provides that the "amounts reasonably necessary to be expended" shall be determined in accordance with § 707(b)(2)(A) and (B) only when the annualized income exceeds the median family income. 11 U.S.C. § 1325(b)(3). That provision does not apply to debtors who earn less than the median family income. Congress could have determined that all debtors' expenses should be determined in accordance with the IRS standards. It did not. Therefore, this Court finds that Form B22C does not determine the "amounts reasonably necessary to be expended" when a debtor's income falls below the median family income.

Interpreting and implementing the Code in this manner does not result in inequitable results. The Debtors argue that such a result is unfair because had they earned more, they would actually pay less. However, the applicable commitment

---

[6] The Interim Rules and Official Forms Implementing the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 and committee notes can be found on the Court's website at: www.ilnb.uscourts.gov.

period for below median income debtors is three years, as opposed to five years. In addition, under § 1325(b)(2) this Court retains the discretion to determine the reasonableness of expenses and it is not bound by the amounts set forth by the IRS standards. See *In re Quarterman*, 341 B.R. 647 (Bankr. M.D. Fla. 2006). Finally, the Debtors' calculations on Form B22C both result in negative numbers. If the calculation on Form B22C were used, the Debtors' plans would be unfeasible and could not be confirmed.

Similarly, Schedule J, alone, cannot be used to determine projected disposable income. The *Kibbe* case does not support the Trustee's position. The court held that "projected disposable income" for a below median income debtor should be determined in accordance with Schedule I, which more accurately reflects a debtor's current income. However, the court did not address the assertion of the propriety of simply subtracting the amount on Schedule J from Schedule I. The court summarily stated that "disposable income in the instant case is determined by reference to Schedules I and J." *Id.* at 414.

Conversely, the Court in *Quarterman* discussed the actual calculation of projected disposable income pursuant to § 1325(b)(2). The court explained that the $2,510.00 listed on Schedule J did not reflect the secured claims that the debtor was proposing to pay through the plan. 341 B.R. at 652. Thus, the court subtracted the monthly payment of $452.00 on account of secured claims to the amount listed on Schedule J to arrive at the "'amount reasonably necessary to be expended,' for purposes of section 1325(b)(2)(A) and (B)." *Id.*

Payment on account of secured debts must be taken into account to calculate projected disposable income. Schedule J does not list payments for secured debts, such as vehicle loans.[7] The calculation of projected disposable income must take into account payment on account of secured claims and payment of the Trustee's administrative expense. If this were not the result, every plan proposed by debtors whose earnings fall below the median family income would necessarily go beyond the thirty-six month applicable commitment period. Therefore, this Court adopts the holding in *Quarterman* and finds that the amount calculated on Schedule J minus any payments on account of secured debts, if not already listed therein, must be used to determine projected disposable income.

### Applicable Commitment Period: a monetary or temporal requirement?

The Trustee objects on the basis that the total amount paid to unsecured creditors does not equal the base amount. The Debtors both propose to make thirty-six monthly payments. Section 1325(b)(1)(B) requires the plan to "provide that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan."

Cases have held that the "applicable commitment period" is a "temporal" rather than a "monetary" requirement, that is whether it is a multiplier or a time period. The court in *McGuire* explained, a monetary interpretation would render § 1325(b)(4)(B)

---

[7] Schedule J includes expenses for housing whether or not such expense is on account of a secured debt. Vehicle payments, however, are specifically excluded.

meaningless. *In re McGuire*, 341 B.R. 608, 615 (Bankr. W.D. Mo. 2006); *see also In re Schanuth*, 342 B.R. 601 (Bankr. W.D. Mo. 2006). A plan may propose payments for less than three- or five-years only if the plan provides for full payment to the unsecured creditors. A monetary interpretation would allow a debtor to cease making payments any time before the expiration of the applicable commitment period when the base amount is paid in full, rather than when the unsecured creditors are paid in full. This Court adopts the holding that the "applicable commitment period" is a temporal requirement rather than a multiplier. While the Debtors propose to make payments for three-years, this Court can approve a longer period if cause exists.

Cause does not exist to extend the plan terms beyond the three year applicable commitment period. Section 1322 provides that a plan proposed by a debtor whose current monthly income totals less than the median family income "may not provide for payments over a period that is longer than 3 years, unless the court, for cause, approves a longer period . . . ." 11 U.S.C. § 1322(d)(2). Courts have held that increasing the amount paid to unsecured creditors constituted cause to extend the term of a Chapter 13 plan.

The Seventh Circuit Court affirmed the bankruptcy court's holding that to provide a "meaningful dividend to general unsecured creditors" constituted cause to extend the plan beyond thirty-six months. *Matter of Witkowski*, 16 F.3d 739, 747 (7th Cir. 1994.) That case, however, involved the modification of a plan from a percentage plan to a pot plan, which is analogous to the base amount, when some unsecured creditors failed to file proofs of claims. In so doing, the Seventh Circuit did not extend the length of the

8

plan, but instead approved the original length of the plan which resulted in a greater distribution to the unsecured creditors.

As Judge Altenberger noted in an unpublished opinion, the usual reasons to extend a plan beyond five years are to cure a default on a mortgage and to pay priority or allowed secured claims in a shorter time. *In re McMeekan*, 1997 WL 33475211 (Bankr. C.D. Ill. January 30, 1997)(quoting 5 *Collier on Bankruptcy*, ¶ 1322-15 (15th Ed.)). The court goes on to cite Collier for the proposition that court's should now allow the imposition of extensions by creditors or the chapter 13 trustee, because in so doing would be to renew the practices to which Congress objected and would be contrary to the Code. *Id.*

Similarly, the Ninth Circuit Bankruptcy Appellate Panel reaffirmed its finding that "the debtors must *voluntarily* choose to extend their plan beyond three years." *In re Villanueva*, 274 B.R. 836, 842 (9th Cir. BAP 2002)(quoting *Washington Student Loan Guaranty Ass'n v. Porter (In re Porter)*, 102 B.R. 773, 777 (9th Cir. BAP 1989), *aff'd* 919 F.2d 145 (9th Cir. 1990)). This Court finds that debtors should voluntarily choose to extend the plan beyond thirty-six months. This holding is not contrary to the Seventh Circuit holding in *Witkowski*. The debtor in that case was not forced to involuntarily make plan payments over a longer period that was originally proposed. The Debtors propose to make payments for the three-year applicable commitment period. Therefore, the Trustee's motion to dismiss is overruled on that basis.

## CONCLUSION

Form B22C does not determine the projected disposable income for debtors whose income falls below the median family income. Instead, the amount listed on Schedule J minus any payments on account of secured debt not already listed therein should be utilized. This amount constitutes a debtor's projected monthly disposable income. This amount must be paid for a three-year applicable commitment period required for below median income earning debtors. The Debtors' plans comply with § 1325(b)(1)(B); they propose to contribute all of their projected disposable income for the applicable commitment period. Because the applicable commitment period is a temporal requirement, the imposition of a base amount is inappropriate. Therefore, the Trustee's motion to dismiss the Chapter 13 plans is overruled. However, because this Court cannot ascertain whether payment on account of secured debts was subtracted from the amount listed on Schedule J, the plans will not be confirmed as proposed.

The foregoing constitutes findings of fact and conclusions of law as required by Fed. R. Civ. P. 52(a) and Fed. R. Bankr. P. 7052. A separate judgment will be entered giving effect to the determinations reached herein.

Dated: August 18, 2006

AUG 18 2006

Manuel Barbosa
United States Bankruptcy Judge